# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: DEEPWATER HORIZON BELO CASES | Case No. 3:19-cv-963 |
| This Document Relates to: | Judge M. Casey Rodgers |
| *Harley Allen*, 4:19-cv-08<br>*Larry Blount*, 5:19-cv-227<br>*Fabrice Bowdry*, 5:19-cv-539<br>*Jonah Brackins*, 5:19-cv-147<br>*Christopher William Brown*, 3:19-cv-423<br>*Terrance Brown*, 5:19-cv-150<br>*Timothy A. Brown, Jr.*, 5:19-cv-369<br>*Thomas Coleman*, 5:19-cv-259<br>*Shaunette Cook*, 3:19-cv-3352<br>*Tristian Crowder*, 5:19-cv-390<br>*Dallas Finch*, 4:19-cv-123<br>*Travis R. Gerkin*, 5:19-cv-273<br>*Devon Holley*, 5:19-cv-343<br>*Zebulun Johnson*, 5:19-cv-391<br>*Luther Kirkland*, 5:19-cv-462<br>*Daniel Lowery*, 3:20-cv-3646<br>*Jose Marengo*, 3:19-cv-07<br>*Michael Moulder*, 5:19-cv-12<br>*Hector Sostre*, 3:19-cv-3608<br>*Jason Woods*, 5:19-cv-200 | Magistrate Judge Gary R. Jones |

## BP EXPLORATION & PRODUCTION INC. AND BP AMERICA PRODUCTION COMPANY'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT BASED ON NO ADMISSIBLE PROOF OF INJURY

BP Exploration & Production Inc. and BP America Production Company (collectively, the "BP Parties") submit this Memorandum in Support of their Motion for Summary Judgment.[1] The BP Parties are entitled to summary judgment because each of the 20 Plaintiffs cannot come forward with any admissible proof of a valid diagnosis upon which their lawsuits are based. Plaintiffs' inability to prove a valid diagnosis, an essential element of their claims against the BP Parties, forecloses their right to proceed to trial. Accordingly, the BP Parties are entitled to judgment as a matter of law, and Plaintiffs' claims should be dismissed with prejudice.

---

[1] Due to the uniformity of evidence, facts, and pertinent issues, the BP Parties have filed this identical Motion and Brief in Support in the 20 cases listed above. This multi-plaintiff Motion seeks an Order dismissing these cases that rely on Dr. Lippmann's purported diagnosis as the basis of their cause of action. In an effort to preserve judicial resources, the language of this Motion, including the Brief in Support, and the exhibits attached herein are identical for each of the 20 instant cases in which they are filed.

## SUMMARY OF ARGUMENT

Each Plaintiff has filed a Back-End Litigation Option ("BELO") lawsuit pursuant to the provisions of the *Deepwater Horizon* Medical Benefits Class Action Settlement Agreement ("MSA") seeking compensation for alleged exposure-based physical conditions *first* diagnosed after April 16, 2012, and defined in the MSA as a "Later-Manifested Physical Condition" (LMPC"). The issue before this Court is similar to previous motions for summary judgment where BELO Plaintiffs rely on inadmissible diagnostic reports to prosecute their cases.[2]

These cases contain identical facts about their LMPC diagnoses. Each of these BELO Plaintiffs submitted diagnostic reports purportedly authored by Dr. Ron Lippman, D.O. as the basis for their BELO lawsuits. Yet, these documents were used as a litigation screening tool by Dr. Lippman at the request of the Downs Law Group, who represents all of the instant Plaintiffs. They were not intended to and do not provide a valid medical diagnosis for any of the alleged LMPCs at issue in these cases. Dr. Lippmann's own sworn statement clearly demonstrates that any records purportedly reflecting a correct medical diagnosis generated by him are inadmissible.

---

[2]   *See In re: Deepwater Horizon BELO Cases*, No. 3:19-cv-963-MCR-GRJ, Doc. No. 311 (N.D. Fl., Sept. 3, 2021) (BP Exploration & Production's Memorandum in Support for Motion for Summary Judgment Based on No Admissible Proof of Injury) at pgs. 2-3.

In his affidavit, Dr. Lippmann swore he cannot verify and will not be able to verify any of "the underlying diagnoses purportedly authored by [him]." Further, he acknowledged that he is unable to "verify the facts and contents of the records applicable to the identified claimants." Dr. Lippmann confirmed that he did not have a doctor-patient relationship with any of these BELO Plaintiffs, nor did he "ever intend to proffer an opinion with respect to the underlying cause of [the plaintiffs'] alleged symptoms, injuries, or illnesses."

The BP Parties move this Court for summary judgment because Plaintiffs cannot prove, through admissible evidence, the validity of their LMPC diagnoses upon which their lawsuits are based. The BP Parties are entitled to judgment as a matter of law as a result of Plaintiffs' inability to prove this essential element of their claims.

For the Court's convenience, and in order to cross-reference those portions of the lettered composite exhibits that apply to a particular Plaintiff, each Plaintiff has been assigned an identifying number as indicated in the chart below. For example, those portions of Exhibit A that apply to Harley Allen are identified as A(1) and the portions of Exhibit B that apply to Larry Blount are identified as B(2), etc.:[3]

---

[3] The BP Parties have elected to file this Motion and Memorandum in Support in both the Court's global docket and each Plaintiff's individual case docket. Therefore, for the Court's convenience, when this Memorandum in Support is filed in the individual dockets, Exhibits A, B, and C will only contain the Plaintiff-specific records (i.e. the Exhibit A of this

4

| PLAINTIFF | IDENTIFYING NO. |
|---|---|
| Harley Allen, 4:19-cv-08 | (1) |
| Larry Blount, 5:19-cv-2227 | (2) |
| Fabrice Bowdry, 5:19-cv-539 | (3) |
| Jonah Brackins, 5:19-cv-147 | (4) |
| Christopher William Brown, 3:19-cv-423 | (5) |
| Terrance Brown, 5:19-cv-150 | (6) |
| Timothy A. Brown, Jr., 5:19-cv-369 | (7) |
| Thomas Coleman, 5:19-cv-259 | (8) |
| Shaunette Cook, 3:19-cv-3352 | (9) |
| Tristian Crowder, 3:19-cv-3690 | (10) |
| Dallas Finch, 4:19-cv-123 | (11) |
| Travis R. Gerkin, 5:19-cv-273 | (12) |
| Devon Holley, 5:19-cv-343 | (13) |
| Zebulun Johnson, 5:19-cv-391 | (14) |
| Luther Kirkland, 5:19-cv-462 | (15) |
| Daniel Lowery, 3:20-cv-3646 | (16) |
| Jose Marengo, 3:19-cv-07 | (17) |
| Michael Moulder, 5:19-cv-12 | (18) |
| Hector Sostre, 3:19-cv-3608 | (19) |
| Jason Woods, 5:19-cv-200 | (20) |

## I.   INTRODUCTION

### A.   The MSA and Requirements of a BELO Lawsuit

The MSA provides a comprehensive scheme to compensate those affected by the *Deepwater Horizon* oil spill and clean-up efforts. For an LMPC the only way to

---

Memorandum that is filed in *Harley Allen v. BP Exploration & Production*, 4:19-cv-08, will only contain Plaintiff Allen's transfer order).

5

seek compensation under the MSA is through the BELO process. To initiate the BELO process, Class Members must submit a Notice of Intent to Sue ("NOIS") to the MSA Claims Administrator within four years of the date of first diagnosis of their alleged LMPC.[4] The NOIS must contain a description of the LMPC alleged and a physician's certificate or diagnostic record matching that description.[5] The MSA Claims Administrator's review, however, is limited in scope to the diagnostic records submitted with the NOIS to confirm only that the wording of the alleged LMPC included on the claimant's NOIS matches the wording in the underlying diagnostic record submitted.[6] This review does not determine whether those diagnoses are proper, admissible, or legitimate.[7] The admissibility of the underlying diagnostic records are determined by the BELO Court. .  Section VIII of the MSA details the requirements of a BELO lawsuit and the triable issues:[8]

---

[4]  MSA § II.VV.

[5]  *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, April 20, 2010*, No. 10-md-2179, Doc. No. 8217 (E.D. La., January 11, 2013) (Order and Reasons Approving the MSA); MSA § IV(C).  The BELO process for LMPCs was ostensibly designed to provide a mechanism for the evaluation and trial of latent illnesses or injuries that were not likely to manifest until well after a claimant's underlying exposure had occurred, e.g., malignancies with long latency periods.  Other Courts have previously adjudicated BELO lawsuits, and have issued rulings that thoroughly explain the basics of such suits.  *See, e.g., Picaun v. BP Expl. & Prod. Inc.,* No. 15-cv-2963, 2016 WL 7187946, at *2-7 (E.D. La. Dec. 12, 2016).

[6]  MSA § VIII.A. *See also* Rep. & Rec. at 4-6, Rec. Doc. 7, *McGill v. BP Expl. & Prod. Inc.,* No. 2:1-CV-130 (E.D. La. Feb. 28, 2018).

[7]  MSA § VIII.C.1.

[8]  MSA § VIII (G)(3)(a) (emphasis added).

    i. **The fact of diagnosis (*i.e.*, whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER was correctly diagnosed with the alleged LATER-MANIFESTED PHYSICAL CONDITION);**

    ii. The amount and location of oil, other hydrocarbons and other substances released from the MC252 WELL and/or the Deepwater Horizon and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES and the timing thereof;

    iii. The level and duration of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the Deepwater Horizon and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and the timing thereof;

    iv. Whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S alleged LATER-MANIFESTED PHYSICAL CONDITION was legally caused by his or her exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or dispersants and/or decontaminants use in connection with the RESPONSE ACTIVITIES;

    v. Whether there exists any alternative cause for the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S alleged LATER-MANIFESTED PHYSICAL CONDITION, including, but not limited to, exposure to other substances or sources of contaminants and/or toxins; and

    vi. The amount, if any, of compensatory damages to which the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is entitled.

Because of Dr. Lippmann's sworn affidavit, none of the instant Plaintiffs can prove the first element of their claim, that is, the <u>fact of a correct diagnosis</u>.

7

## II. STATEMENT OF UNDISPUTED FACTS

1. Each Plaintiff subject to this Motion filed a BELO lawsuit in the MDL Court of the Eastern District of Louisiana that was subsequently transferred to the Northern District of Florida pursuant to the terms of the BELO Initial Proceedings Case Management Order.[9] [10]

2. Plaintiffs' Complaints allege that they were diagnosed with an LMPC on a certain date and cite reports as evidence by Dr. Lippmann or a medical provider from his office, but each Plaintiff was ultimately diagnosed using a report that bears his signature, or letterhead.[11]

3. The LMPCs reflected in Plaintiffs' Complaints and NOISs are based on the diagnostic reports purportedly executed by Dr. Lippmann. These diagnostic records form the basis for their alleged LMPC diagnoses.[12]

---

[9] Exhibit A, Transfer Orders, **A(1)** at 1; **A(2)** at pg. 2; **A(3)** at pg. 3; **A(4)** at pg. 4; **A(5)** at pg. 5; **A(6)** at pg. 6; **A(7)** at pg. 7; **A(8)** at pg. 8; **A(9)** at pg. 9; **A(10)**, at pg. 10; **A(11)** at pg. 11; **A(12)** at pg. 12; **A(13)** at pg. 13; **A(14)** at pg. 14; **A(15)** at pg. 15; **A(16)** at pg. 16; **A(17)** at pg. 17; **A(18)** at pg. 18; **A(19)** at pg. 19; **A(20)** at pg. 20;

[10] *See In re Deepwater Horizon*, No. 2:10-md-02179, Rec. Doc. 14099, BELO Cases Initial Proceedings Case Management Order at 4 (Jan. 30, 2015).

[11] Exhibit B, BELO Complaint Excerpts, **B(1)** at pg. 1; **B(2)** at pg. 2; **B(3)** at pg. 3; **B(4)** at pg. 4; **B(5)** at pg. 5; **B(6)** at pg. 6; **B(7)** at pg. 7; **B(8)** at pg. 8; **B(9)** at pg. 9; **B(10)** at pg. 10; **B(11)** at pg. 11; **B(12)** at pg. 12; **B(13)** at pg. 13; **B(14)** at pg. 14; **B(15)** at pg. 15; **B(16)** at pg. 16; **B(17)** at pg. 17; **B(18)** at pg. 18; **B(19)** at pg. 19; **B(20)** at pg. 20;

[12] Exhibit C, Lippmann Diagnostic Reports, **C(1)** at pg. 1; **C(2)** at pgs. 2-3; **C(3)** at pgs. 4-5; **C(4)** at pgs. 6-9; **C(5)** at pg. 10; **C(6)** at pg. 11; **C(7)** at pgs. 12-13; **C(8)** at pg. 14; **(C9)** at pgs. 15-16; **C(10)** at pgs. 17-18; **C(11)** at pg. 19; **C(12)** at pg. 20; **C(13)** at pgs. 21-23; **C(14)** at pgs. 24-27; **C(15)** at pgs. 28-29; **C(16)** at pgs. 30-31; **C(17)** at pg. 32; **C(18)** at pgs. 33-36; **C(19)** at pg. 37; **C(20)** at pgs. 38-39.

4. Certain diagnostic reports, like the form for Plaintiff Jason Edward Woods excerpted below, clearly indicate that Dr. Lippmann did not retain the records of the underlying examination and instead sent them to Plaintiffs' counsel the Downs Law Group ("Downs").



5. On August 23, 2021, Dr. Lippmann executed a sworn affidavit in which he affirmed the following facts:

    a) His medical practice was contacted by a representative from the Downs Law Group who asked Dr. Lippmann to "screen" some of its clients, including Plaintiffs.

    b) He did not have a physician-patient relationship with any of the Downs clients, including Plaintiffs.[13]

    c) He is unable to verify the facts and contents of the records applicable to the identified claimants,

---

[13] *Id.*

|   |   |   |
|---|---|---|
|   |   | including the records relied upon by Plaintiffs, nor would he be able to verify such records if asked to do so in the future.[14] |
|   | d) | He is unable to verify the underlying diagnoses purportedly authored by him, nor would he be able to verify such records if asked to do so in the future.[15] |
|   | e) | He never intended to proffer an opinion with respect to the underlying cause of the Downs clients alleged symptoms, injuries, or illnesses.[16] |
|   | f) | He did not maintain originals or copies of any records, that he may have signed related to the Downs clients he purportedly examined, including Plaintiffs.[17] |
|   | g) | He did not possess any documents, materials, or information applicable to the Downs clients.[18] |
|   | h) | He is unable to authenticate any original or copy of any records he purportedly authored.[19] |
|   | i) | He would be unable to swear under oath that the content and substance of any records purportedly authored by him were accurate, complete, or have not been altered in any way.[20] |

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

### III.     MEMORANDUM OF LAW

#### A. Standard of Review

The governing standard for review of an insufficient evidence motion for summary judgment was established by the Supreme Court in *Celotex Corp. v. Catrett*.[21] In evaluating that case, the Supreme Court found that if a dispositive issue is one that the non-mover bears the burden of proof, it suffices for the moving party to point out that there is insufficient record evidence on the issue.[22] Once that showing is made, the burden then shifts to the non-mover to show there is a genuine issue of material fact.[23] Summary judgment is required "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[24]

#### B. Legal Argument

##### 1. Plaintiffs Cannot Prove the Fact of a Medical Diagnosis.

BELO lawsuits are governed by the terms of the MSA and general maritime law.[25] Under the MSA and general maritime law, BELO plaintiffs must prove the

---

[21]     477 U.S. 317 (1986).
[22]     *Celotex* at 325.
[23]     *Id.* at 324.
[24]     *See Bell v. Sec'y of Fla. Dep't of Corr.*, 491 F. Appx. 57, 59 (11th Cir. 2012) ("Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an essential element of its case, and on which it bears the burden of proof at trial." citing *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008)).
[25]     *Piacun v. BP Expl. & Prod., Inc.*, No. CV 15-2963, 2016 WL 7187946, at *7 (E.D. La. Dec. 12, 2016).

validity of each LMPC diagnosis.[26]  Courts have consistently held that a BELO "plaintiff must rely on expert testimony to prove his medical diagnosis"[27] and have granted summary judgment against plaintiffs who failed to provide admissible evidence on the fact of a correct diagnosis.[28] Accordingly, Plaintiffs must prove based on admissible evidence from Dr. Lippmann that their underlying LMPC diagnoses were valid.

A predicate to the admissibility of any extrinsic evidence – such as a medical record – is authentication. *See* Fed. R. Evid. 901.  Although this proof can often be met through the testimony of a witness with knowledge that the item is what it

---

[26] *Id.* at *4-5.

[27] *See Caballero v. BP Expl. & Prod. Inc.*, No. 1:19-cv-00305, 2020 WL 2497714, at *3 (S.D. Miss. May 14, 2020) (Ozerden, H.); *Cook v. BP Expl. & Prod. Inc.*, No. 1:18-cv-367, 2019 WL 6534141, at *3 (S.D. Miss. Dec. 4, 2019) (Ozerden, H.); *Banegas v. BP Expl. & Prod. Inc.*, No. 17-7429, 2019 WL 424683, at *2 (Vance, J.) (citing *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 723 (5th Cir. 2009)); *Williams v. BP Expl. & Prod. Inc.*, No. 18-9753, 2019 WL 6615504, at *8 (E.D. La. Dec. 5, 2019) (Morgan, J.); *Escobar v. BP Expl. & Prod. Inc.*, No. 18-9170, 2019 WL 6877645, at *2 (E.D. La. Dec. 17, 2019) (Morgan, J.); *Piacun*, 2016 WL 7187946, at *4 (Morgan, J.); *see also United States v. Crinel*, No. 15-61, 2016 WL 6441249, at *7 (E.D. La. Nov. 1, 2016) ("an opinion regarding a patient's medical diagnoses or prognoses 'falls within the scope of expert testimony under [Federal Rule of Evidence] 702'") (quoting *Barnes v. BTN, Inc.*, 12-cv-34, 2013 WL 1194753, at *2 (S.D. Miss. Mar. 22, 2013), *aff'd*, 555 F. App'x 281 (5th Cir. 2014)); *Edmonds v. Ill. Cent. Gulf R. Co.*, 910 F.2d 1284, 1287 (5th Cir. 1990) (requiring a medical doctor as an expert on medical diagnoses of medical conditions and related medical studies and tests).

[28] *See Escobar v. BP Expl. & Prod. Inc. , Inc.*, No. CV-18-9170, 2019 WL 6877645 (E.D. La. Dec. 17, 2019) (holding that there was no competent evidence when "the only summary judgment evidence before the Court relating to Plaintiff's medical diagnosis … is a three-page Examination Report from Industrial Medical Specialists."); *Banegas v. BP Expl. & Prod., Inc.,* No. CV 17-7429, 2019 WL 424683 (E.D. La. Feb. 4, 2019) (granting summary judgment where the BELO plaintiff had not designated a physician to provide testimony as to his medical diagnosis) (citing *Seaman v. Seacor Marine LLC*, F. App'x 721, 723 (5th Cir. 2009)).

purports to be, *see* FRE 901(b)(1), that is not true here, where Dr. Lippmann has expressly attested that he cannot vouch for the accuracy of these records.[29]

Considering Dr. Lippmann's statements that refute the contents of the diagnostic reports, Plaintiffs cannot prove that any purported LMPC diagnoses by him are verifiable or admissible. Dr. Lippmann did not have a physician-patient relationship with the Plaintiffs and did not maintain or keep any records related to the Plaintiffs. His affidavit establishes that he cannot authenticate or verify the accuracy of the content in any diagnostic reports or say whether they have been altered in any way.[30] As a result, Dr. Lippmann lacks personal knowledge necessary to offer testimony – and never intended to offer testimony – to establish the validity of any Plaintiff's purported LMPC diagnosis. He does not know who he evaluated, what symptoms (if any) were actually presented to him during that evaluation, or what findings and diagnostic opinions he made based on that purported evaluation.

---

[29] And even if the BELO Plaintiffs could clear the hurdle of authentication, which they cannot, the "diagnostic records" here do not qualify as exceptions to the hearsay rule. Medical records can often meet the business record exception of FRE 803(6) as "records of a regularly conducted activity," however, these BELO Plaintiffs cannot establish any of the requirements for application of the exception. Indeed, Dr. Lippmann's affidavit establishes that these records were not kept by him in the "regular practice" of his office. Rather, they were generated for the purpose of litigation "screening." That fact alone makes them ineligible for the business records exception either as not having been prepared in the regular course of business or as lacking indications of trustworthiness. *See, e.g., Noble v. Alabama Dep't of Envt. Mgmt.*, 872 F.2d 361, 365-67 (11th Cir. 1989); *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 238-39 (5th Cir. 1988); *United States v. Blackburn*, 992 F.2d 666, 670 (7th Cir. 1993), cert. denied, 510 U.S. 949 (1943).

[30] Exhibit D, Dr. Lippmann's Executed No-Records Affidavit.

In fact, there is no way to tell whether he even evaluated the person whose name is on the form. There is no way to tell if the history of present illness, chief complaints, symptoms, findings, circles, and/or dates on the forms have been changed or altered. There is no way to tell whether signatures have been copied, traced, or pasted electronically. Dr. Lippman's affidavit proves that Plaintiffs cannot authenticate the "diagnostic reports" and that no exception exists under the hearsay rule. Therefore, these diagnostic reports are inadmissible and must be excluded by this Court.[31]

## IV.  CONCLUSION

The BP Parties are entitled to summary judgment as a matter of law because Plaintiffs cannot prove the validity of the underlying LMPC diagnoses upon which their BELO lawsuits are based. Plaintiffs' inability to prove this essential element of their claims against the BP Parties forecloses their right to proceed to trial.

---

[31]    *See* FED. R. EVID. R. 901(a), 802.

## Certificate Pursuant to Rules 7.1(F) and 56.1(B)

The undersigned certifies that this Memorandum in Support contains 3,598 words.

Date:   September 16, 2021

Respectfully submitted,

<u>*/s/ Thomas W. Tardy, III*</u>
Thomas W. Tardy, III, Esq.
(*Admitted Pro Hac Vice*)
Ericson W. Enger, Esq.
(*Admitted Pro Hac Vice*)
Kalleigh A. McCoy, Esq.
(*Admitted Pro Hac Vice*)
Maron Marvel Bradley Anderson & Tardy LLC
1020 Highland Colony Parkway, Suite 400
Ridgeland, MS  39157
Telephone: (601) 960-8663
Facsimile: (601) 206-0119
ttardy@maronmarvel.com
eenger@maronmarvel.com
kmccoy@maronmarvel.com

AND

Francis M. McDonald, Jr., Esq.
Florida Bar No. 0327093
Sarah A. Long, Esq.
Florida Bar No. 0080543
Jessica M. Kennedy, Esq.
Florida Bar No. 0096015
McDonald Toole Wiggins, P.A.
111 N. Magnolia Avenue, Suite 1200
Orlando, FL 32801

*Attorneys for Defendants,*

*BP Exploration & Production Inc. &*
*BP America Production Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 16, 2021, the foregoing was electronically filed with the Clerk of Court via the CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

C. David Durkee, Esq., The Downs Law Group, P.A., 3250 Mary Street, Suite. 307 Coconut Grove, FL 33133, ddurkee@downslawgroup.com (*Attorney for Plaintiff*)

*/s/ Thomas W. Tardy, III*
Thomas W. Tardy, III, Esq.
(*Admitted Pro Hac Vice*)
Ericson W. Enger, Esq.
(*Admitted Pro Hac Vice*)
Kalleigh A. McCoy, Esq.
(*Admitted Pro Hac Vice*)
Maron Marvel Bradley Anderson & Tardy LLC
1020 Highland Colony Parkway, Suite 400
Ridgeland, MS  39157
Telephone: (601) 960-8663
Facsimile: (601) 206-0119
ttardy@maronmarvel.com
eenger@maronmarvel.com
kmccoy@maronmarvel.com