# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: DEEPWATER HORIZON BELO CASES | Case No. 3:19-cv-963-MCR-GRJ |
| | Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

This Document Relates to:

*Harley Allen*, 4:19-cv-08
*Larry Blount*, 5:19-cv-227
*Fabrice Bowdry*, 5:19-cv-539
*Jonah Brackens*, 5:19-cv-147
*Christopher William Brown*, 3:19-cv-423
*Terrence Brown*, 5:19-cv-150
*Timothy A. Brown, Jr.*, 5:19-cv-369
*Thomas Coleman*, 5:19-cv-259
*Shaunette Cook*, 3:19-cv-3352
*Tristin Crowder*, 5:19-cv-390
*Dallas Finch*, 4:19-cv-123
*Travis R. Gerkin*, 5:19-cv-273
*Devon Holley*, 5:19-cv-343
*Zebulun Johnson*, 5:19-cv-391
*Luther Kirkland*, 5:19-cv-462
*Daniel Lowery*, 3:20-cv-3646
*Jose Marengo*, 3:19-cv-07
*Michael Moulder*, 5:19-cv-12
*Hector Sostre*, 3:19-cv-3608
*Jason Woods*, 5:19-cv-200
_____/

## REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment Based on No Admissible Proof of Injury brought by Defendant BP Exploration & Production, Inc. and BP America Production Company ("BP") for these

Back-End Litigation Option ("BELO") cases. Master Docket ECF No. 328.[1] Plaintiffs oppose the motion, ECF No. 350, BP replied with leave of court, ECF No. 360, and Plaintiffs filed a surreply with leave of court, ECF No. 370. The motion is, therefore, ripe for consideration. Upon due consideration and for the reasons discussed below, the Court concludes that the Motion for Summary Judgment is due to be **DENIED**.

## I.  BACKGROUND FACTS

These lawsuits arise out of the blowout, explosions, fires, and subsequent oil spill that occurred at the Deepwater Horizon mobile offshore drilling unit in the Gulf of Mexico on April 20, 2010.[2] During the months

---

[1] The ECF numbers for the motions for summary judgment filed in the individual cases are as follows: *Harley Allen*, Case No. 4:19-cv-08 (ECF No. 41); *Larry Blount*, Case No. 5:19-cv-227 (ECF No. 23); *Fabrice Bowdry*, Case No. 5:19-cv-539 (ECF No. 25); *Jonah Brackens*, Case No. 5:19-cv-147 (ECF No. 25); *Christopher William Brown*, Case No. 3:19-cv-423 (ECF No. 36); *Terrence Brown*, Case No. 5:19-cv-150 (ECF No. 42); *Timothy A. Brown, Jr.*, Case No. 5:19-cv-369 (ECF No. 23); *Thomas Coleman*, Case No. 5:19-cv-259 (ECF No. 31); *Shaunette Cook*, Case No. 3:19-cv-3352 (ECF No. 21); *Tristin Crowder*, Case No. 5:19-cv-390 (ECF No. 22); *Dallas Finch*, Case No. 4:19-cv-123 (ECF No. 33); *Travis R. Gerkin*, Case No. 5:19-cv-273 (ECF No. 28); *Devon Holley*, Case No. 5:19-cv-343 (ECF No. 26); *Zebulun Johnson*, Case No. 5:19-cv-391 (ECF No. 22); *Luther Kirkland*, Case No. 5:19-cv-462 (ECF No. 21); *Daniel Lowery*, Case No. 3:20-cv-3646 (ECF No. 22); *Jose Marengo*, Case No. 3:19-cv-07 (ECF No. 42); *Michael Moulder*, Case No. 5:19-cv-12 (ECF No.47); *Hector Sostre*, Case No. 3:19-cv-3608 (ECF No. 22); and *Jason Woods*, Case No. 5:19-cv-200 (ECF No. 35).

[2] Victims of the oil spill filed hundreds of cases. In August 2010, the cases were consolidated in the Eastern District of Louisiana as part of the Deepwater Horizon multidistrict litigation (MDL No. 2179). *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, Case No. 2:10-md-2179-CJB-JCW (E.D. La).

immediately following the explosion, large scale clean-up efforts to address the oil spill occurred both on land and at sea. Various oil spill clean-up companies hired these Plaintiffs to clean up oil-soaked beaches along the Gulf of Mexico coast.

During their clean-up work, Plaintiffs were exposed to crude oil and chemical dispersants that Plaintiffs allege caused them harm. Specifically, Plaintiffs complain that their exposure to the toxins cause them to suffer from chronic medical conditions, even today. The conditions complained of include chronic dry eye, chronic conjunctivitis, and various chronic skin conditions.

Plaintiffs are not the only workers who suffered various illnesses caused by exposure to toxins during the oil spill clean-up. A slew of other clean-up workers, like Plaintiffs, alleged physical injuries as well. BP ultimately settled all clean-up worker claims in the Medical Benefits Class Action Settlement ("MSA") approved by the Court.[3] The MSA divides clean-up workers into two groups: (1) individuals whose physical injuries manifested prior to April 16, 2012; and (2) individuals whose physical

---

[3] *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, Case No. 2:10-md-2179-CJB-JCW (E.D. La), Deepwater Horizon Medical Benefits Class Action Settlement Agreement, ECF No. 6427-1.

injuries manifested after April 16, 2012. Plaintiffs, here, belong to the second group. Their alleged injuries came to light after April 16, 2012.[4] For injuries manifesting after April 16, 2012, the MSA provides two options for a remedy: (1) compensation through workers' compensation law; or (2) compensation from BP. E.D. La. Docket, Case No. 2:10-md-2179-CJB-JCW, ECF No. 6427-1 (MSA § VIII.B.1.). Individuals who elect not to pursue workers' compensation must follow the Back End Litigation Option ("BELO") process set forth in the MSA to recover from BP. *Id*. Plaintiffs in these cases availed themselves of the BELO process and did not seek workers' compensation for their alleged injuries.

The BELO process is the exclusive means by which a BELO plaintiff may seek compensation from BP for oil spill related injuries.[5] Plaintiffs initiate the BELO process by filing a Notice of Intent to Sue ("NOIS") with

---

[4] The MSA refers to physical injuries arising after April 16, 2012 as Later-Manifested Physical Conditions (hereinafter "LMPC"). ECF No. 6427-1 at Recitals, Section II, VV. LMPC is defined as:

> a physical condition that is first diagnosed in a medical benefits settlement class member after April 16, 2012, and which is claimed to have resulted from [the] class member's exposure to oil, other hydrocarbons, or other substances released [during the oil spill], and/or exposure to dispersants and/or decontaminants used in connection with the response activities, where such exposure occurred . . . on or prior to April 16, 2012, for clean-up workers.

*Id*.

[5] The BELO process is set forth in the MSA at §VIII.

the Claims Administrator.[6] After the NOIS is filed, BP has the option to pursue mediation. If BP elects to mediate, a claimant may not bring suit until the mediation process has concluded. After mediation has ended, a plaintiff may file suit against BP pursuant to the provisions of MSA §VIII.G. A BELO action may be brought only for a LMPC for which the plaintiff filed a timely NOIS. Relevant to the instant motion, the MSA sets forth the issues to be litigated in a BELO lawsuit, one of which is "fact of correct diagnosis" as follows:

> (i) *the fact of diagnosis* (i.e., whether the Medical Benefits Settlement Class Member was *correctly diagnosed* with the alleged LMPC).

MSA §VIII.G.3(i). (emphasis added). The MSA further provides that "pretrial discovery may be had only as to non-privileged matters reasonably calculated to lead to the discovery of admissible evidence *relevant to any issue that may be litigated at trial.*" MSA §VIII.G.5. (emphasis added). Construing these provisions together, the parties and the court clearly envisioned that "fact of correct diagnosis" would be the subject of discovery and litigated at trial. Because BP misconstrues the MSA to require

---

[6] The MSA defines the term "Claims Administrator" as "that person or entity selected by the Medical Benefits Class counsel and BP and approved by the Court who shall implement and administer this Medical Benefits Class Action Settlement according to its terms and procedures for the benefit of the Medical Benefits Settlement Class…." MSA, at 13.P.

Plaintiffs to have proven fact of correct diagnosis at the NOIS stage, BP's motion for summary judgment is due to be denied.

## II.  SUMMARY JUDGMENT UNDER RULE 56

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56(c) further provides that the movant may support its assertion that there is no genuine issue of material fact by showing "that the adverse party cannot produce admissible evidence to support the fact" needed to maintain the action. Fed. R. Civ. P. 56(c). Finally, and important, here, Rule 56(e) allows the court to give a party "an opportunity to properly support or address the fact" in issue where the "party fails to properly support an assertion of fact…."  Fed. R. Civ. P. 56(e)(1).  Rule 56 advisory committee's note to 2010 amendments, acknowledges that the court may afford an opportunity to properly support or address the fact in issue, and that "[i]n many circumstances this opportunity will be the court's preferred first step."  The notes further state that Rule 56(e) "orders should be designed to encourage proper presentation of the record."

## III.  DISCUSSION

BP argues that it is entitled to judgment as a matter of law because the Plaintiffs in these BELO cases cannot prove the fact of a correct medical diagnosis.  ECF No. 329 at 11.  According to BP, because Plaintiffs must rely on expert testimony to prove their medical diagnoses, their entire case fails because their "first diagnoses" were made by Dr. Ron Lippmann, D.O., who attests in his affidavit that he made no such diagnoses with respect to these Plaintiffs.  In his Affidavit of No Records In Response to Subpoena, Dr. Lippmann avers that he does not have a doctor-patient relationship with Plaintiffs, nor does he intend to offer an opinion with respect to the underlying cause of their alleged illnesses.  Lippmann Affidavit, ECF No. 329-4 at 2.

Plaintiffs counter with two arguments.  First, Plaintiffs say that they need not rely solely on Dr. Lippmann's testimony to prove the fact of correct medical diagnosis.  They can rely instead on medical examination records and the testimony of other treating nurses and physician assistants, or even other medical experts.  Second, Plaintiffs argue that there is still ample time to address the alleged gap in the record as expert discovery remains open and expert disclosures have not yet been submitted.

In its reply, BP raises a new procedural argument. BP contends that Plaintiffs are barred from pursuing these BELO lawsuits because they failed to prove a correct "first diagnosis" at the NOIS stage. BP further argues that Plaintiffs cannot "retroactively cure" their failure to prove a correct "first diagnosis" by establishing "fact of correct diagnosis" during the discovery phase of these cases. That argument, as Plaintiffs correctly point out, squarely contradicts the plain language and intent of the BELO process outlined in the MSA.

The parties and the MDL court envisioned a three-part BELO process: (1) screening for "first diagnosis" at the NOIS stage by the Claims Administrator; (2) BP's option to engage in mediation with a claimant; and (3) BELO lawsuits where discovery would be taken for the Plaintiffs to prove "fact of correct diagnosis" at trial.

The provisions governing the BELO process begin with what a claimant must do at the NOIS stage.[7] Requirements at this stage include

---

[7] MSA, § VIII. <u>Back-End Litigation Option for Later-Manifested Physical Conditions</u>

A.    A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER seeking compensation from BP for a LATER-MANIFESTED PHYSICAL CONDITION must submit a NOTICE OF INTENT TO SUE, substantially in the form attached hereto as Exhibit 4, and all additional required materials referenced therein, to the CLAIMS ADMINISTRATOR. The NOTICE OF INTENT TO SUE and materials submitted therewith must be submitted to the CLAIMS ADMINISTRATOR within 4 years after either the first

the following: (1) submission of a NOIS to the Claims Administrator; (2) on the proper form; (3) within the designated time period for submitting a NOIS.  MSA, § VIII.A.  Pertinent to the instant motion, the NOIS form requests that a claimant *identify* his or her later-manifested physical condition, which identification is to be accompanied by *either* a physician's certification form *or* medical records containing the date of diagnosis of the later-manifested physical condition.  MSA, Exhibit 4, at 5 (emphasis added).[8]  Notably, the NOIS form does not contain any language concerning the "fact of correct diagnosis."

The "fact of correct diagnosis" language appears only in the MSA provisions governing a BELO lawsuit (under the subheading "Issues to be Litigated.")  See MSA §VIII.G.3.  And, when looking at the BELO process as a whole, it would not make sense for claimants to be required to prove their injuries at the screening stage.  The purpose of the NOIS stage was to identify proper claimants who suffered conditions consistent injury caused by exposure to oil-spill toxins.  BP could then evaluate who was in the

---

diagnosis of that LATER-MANIFESTED PHYSICAL CONDITION or the EFFECTIVE DATE, whichever is later.  A NOTICE OF INTENT TO SUE must identify BP defendants from whom the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER seeks compensation.

[8] *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, Case No. 2:10-md-2179-CJB-JCW (E.D. La), ECF No. 6427-6 (MSA, Ex. 4).

claims pool and make a determination as to which claims it wanted to mediate.  Only after mediation was either declined or came to an impasse, does the concept of proof of correct diagnosis come into play.  As Plaintiffs also correctly point out, it would be unjust to grant summary judgment now against Plaintiffs who have advanced through the screening process and have reliable evidence of diagnosis, especially since BP failed to raise this procedural argument in a Motion to Dismiss.  If the MSA required what BP says, the nimble assessments made at the NOIS stage, which aided in streamlining the BELO process, would be upended.[9]  Accordingly, the Court concludes that BP is not entitled to judgment as a matter of law based on its reading of the MSA.

Finally, because the MSA is straightforward in its meaning, the Court need not hear oral argument on BP's motion.

### IV.  CONCLUSION

Accordingly, for the foregoing reasons, it is respectfully

**RECOMMENDED** that:

1. Defendants' Motion for Summary Judgement Based on No

---

[9] The Court will not reach the tangential issue raised in Plaintiffs' surreply that Physicians' Assistants can provide competent medical evidence.  That issue is not properly before the Court as the Court limited briefing in the surreply to the procedural argument BP raised regarding proof of diagnosis required at the NOIS stage.  *See* Order, ECF No. 364.

Admissible Proof of Injury, ECF No. 328, should be **DENIED**.[10]

It is further **ORDERED** that:

Defendants' Unopposed Motion for Oral Argument, ECF No. 366, is **DENIED**.

**IN CHAMBERS** this 30th day of November 2021.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal co**

---

[10] **The Clerk must docket the report and recommendation in each of the following individual cases and link the report and recommendation to each of the following motions for summary judgment**: *Harley Allen*, Case No. 4:19-cv-08 (ECF No. 41); *Larry Blount*, Case No. 5:19-cv-227 (ECF No. 23); *Fabrice Bowdry*, Case No. 5:19-cv-539 (ECF No. 25); *Jonah Brackens*, Case No. 5:19-cv-147 (ECF No. 25); *Christopher William Brown*, Case No. 3:19-cv-423 (ECF No. 36); *Terrence Brown*, Case No. 5:19-cv-150 (ECF No. 42); *Timothy A. Brown, Jr.*, Case No. 5:19-cv-369 (ECF No. 23); *Thomas Coleman*, Case No. 5:19-cv-259 (ECF No. 31); *Shaunette Cook*, Case No. 3:19-cv-3352 (ECF No. 21); *Tristin Crowder*, Case No. 5:19-cv-390 (ECF No. 22); *Dallas Finch*, Case No. 4:19-cv-123 (ECF No. 33); *Travis R. Gerkin*, Case No. 5:19-cv-273 (ECF No. 28); *Devon Holley*, Case No. 5:19-cv-343 (ECF No. 26); *Zebulun Johnson*, Case No. 5:19-cv-391 (ECF No. 22); *Luther Kirkland*, Case No. 5:19-cv-462 (ECF No. 21); *Daniel Lowery*, Case No. 3:20-cv-3646 (ECF No. 22); *Jose Marengo*, Case No. 3:19-cv-07 (ECF No. 42); *Michael Moulder*, Case No. 5:19-cv-12 (ECF No.47); *Hector Sostre*, Case No. 3:19-cv-3608 (ECF No. 22); and *Jason Woods*, Case No. 5:19-cv-200 (ECF No. 35).