IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE: DEEPWATER HORIZON                    Case No. 3:19-cv-963-MCR-GRJ
BELO CASES

                                            Judge M. Casey Rodgers
                                            Magistrate Judge Gary R. Jones

This Document Relates to:

*Harley Allen*, 4:19-cv-08
*Larry Blount*, 5:19-cv-227
*Fabrice Bowdry*, 5:19-cv-539
*Jonah Brackens*, 5:19-cv-147
*Christopher William Brown*, 3:19-cv-423
*Timothy A. Brown, Jr.*, 5:19-cv-369
*Thomas Coleman*, 5:19-cv-259
*Shaunette Cook*, 3:19-cv-3352
*Tristin Crowder*, 5:19-cv-390
*Dallas Finch*, 4:19-cv-123
*Travis R. Gerkin*, 5:19-cv-273
*Devon Holley*, 5:19-cv-343
*Zebulun Johnson*, 5:19-cv-391
*Luther Kirkland*, 5:19-cv-462
*Daniel Lowery*, 3:20-cv-3646
*Jose Marengo*, 3:19-cv-07
*Michael Moulder*, 5:19-cv-12
*Hector Sostre*, 3:19-cv-3608
*Jason Woods*, 5:19-cv-200
_____/

## **REPORT AND RECOMMENDATION**

Pending before the Court is Plaintiffs' Motion for Sanctions Due to *Ex*

*Parte* Communications with Dr. Ron Lippman in these Back-End Litigation

Option ("BELO") cases.  ECF. No. 395.[1]  Plaintiffs ask the Court to impose sanctions against Defendants BP Exploration & Production, Inc. and BP America Production Company (collectively, "BP") under the Court's inherent authority to sanction attorney misconduct, or in the alternative, to disqualify BP counsel who engaged in the alleged misconduct.  *Id*.

The focus of the alleged misconduct is counsel's alleged violations of state and federal laws as well as the ethics rules.  Specifically, Plaintiffs contend that counsel for BP engaged in *ex parte* communications with Plaintiffs' treating physician and/or expert witness, Dr. Ron Lippmann in violation of Florida state law and counsel's general ethical obligations. Plaintiffs say that counsel's conduct violated the Florida Rules of Professional Conduct by (1) improperly influencing Dr. Lippmann's sworn testimony in his affidavit used to support BP's motion for summary judgement, and (2) failing to disclose to Dr. Lippmann counsel's role during discussions BP had with Dr. Lippmann about his affidavit during the drafting stages. Finally, Plaintiffs say that counsel's *ex parte* communications with Dr. Lippmann violated The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d-5, and HIPAA's privacy rules, 45 C.F.R. §§ 160 and 164, because BP's

---

[1] The motion was not filed separately in the individual cases.

counsel communicated with Dr. Lippmann beyond what Plaintiffs had authorized for these cases.

As a sanction Plaintiffs request that the Court award them costs and fees[2] associated with their need to respond to BP's use of Dr. Lippmann's affidavit in these cases, as well as striking Dr. Lippmann's affidavit from future use.

BP filed a response in opposition, ECF No. 405. The District Judge referred the motion to the undersigned for a report and recommendation under Federal Rule of Civil Procedure 72(b), ECF No. 406.

After careful consideration, and for the reasons discussed below, the Plaintiffs' motion for sanctions is due to be denied.

## I.  BACKGROUND

Plaintiffs' request for sanctions concerns the circumstances surrounding an affidavit executed by Dr. Lippmann that BP relied upon in support of its motion for summary judgment based upon no admissible

---

[2] Plaintiffs seek an award of all reasonable costs and fees, including attorney's fees, associated with defending BP's Motion for summary that relied on Dr. Lippmann's affidavit; all reasonable costs and fees associated with Dr. Lippmann's November 16, 2021 deposition, including costs of transcripts; all reasonable costs and fees associated with Plaintiff's response to BP's Objections to this Court's denial of BP's Motion for Summary Judgment; an award of all prospective costs associated with a Rule 30(b)(6) deposition of MedSouth regarding Plaintiffs' medical records authenticity and/or admissibility; and all other sanctions this Court deems appropriate.  ECF No. 396 at 41-42.

proof of injury.[3]  To understand the context in which the motion for sanctions was filed a brief chronology of the material events leading to Plaintiffs' request is necessary.

Dr. Lippmann is involved in two key phases of the BELO process outlined in the court-approved Medical Benefits Class Action Settlement ("MSA").[4]  The BELO process is the exclusive means by which Plaintiffs may seek compensation from BP for oil spill related injuries suffered during their oil spill clean-up work.[5]  Dr. Lippmann's first involvement is during the Notice of Intent to Sue ("NOIS") stage where Plaintiffs were required to file a medical claim with the Claims Administrator.[6]  At the NOIS stage, counsel for Plaintiffs paid Dr. Lippmann to conduct an initial screening of a number of BELO Plaintiffs to document their ocular, sinus or dermal conditions allegedly caused by exposure to toxins during the oil spill clean-up.

---

[3] This Court denied BP's motion for summary judgment on December 28, 2021. ECF No. 403.

[4] *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, Case No. 2:10-md-2179-CJB-JCW (E.D. La), Deepwater Horizon Medical Benefits Class Action Settlement Agreement, ECF No. 6427-1.

[5] The BELO process is set forth in the MSA at §VIII.

[6] The MSA defines the term "Claims Administrator" as "that person or entity selected by the Medical Benefits Class counsel and BP and approved by the Court who shall implement and administer this Medical Benefits Class Action Settlement according to its terms and procedures for the benefit of the Medical Benefits Settlement Class…."  MSA, at 13.P.

Plaintiffs then used Dr. Lippmann's medical screening information to support claims submitted to the NOIS Claims Administrator—a mandatory first step in the BELO process. Plaintiffs who complete the NOIS process, and who do not settle with BP during the mediation phase, are authorized to bring a BELO lawsuit. That is where Dr. Lippmann appears next.

In April 2021, well past the NOIS process and well into the discovery phase of the BELO lawsuits, BP issued a series of subpoenas to Dr. Lippmann seeking Plaintiffs' medical records. *See* ECF No. 396-7. In response to the subpoenas, Dr. Lippmann stated that "[a]fter a review of both physical medical records and electronic medical records, there is no medical record for [Plaintiffs]." *See e.g., id.* at 4. On June 21, 2021, Dr. Lippmann supplied BP with an affidavit to that effect. ECF No. 396-1 at 2. Beyond attesting to having no medical records for Plaintiffs, Dr. Lippmann also represented that he was retained by Plaintiffs' counsel to "evaluate some of its clients and provide reports for their use in assessing claims against BP." Notably, Dr. Lippmann represented that he "d[id] not have a physician-patient relationship with the …[Plaintiffs] [he] evaluated." ECF No. 396-1 ¶ 2.

This affidavit from Dr. Lippmann, declaring he had no physician-patient relationship with Plaintiffs, was heavily relied upon by BP in its

Motion for Summary Judgment in which BP contended that if no physician-patient relationship existed Plaintiffs could not establish the fact of correct diagnosis—one of the few issues to be decided at the BELO trials. *See* ECF Nos. 328, 329.

As part of Plaintiffs' investigation of the circumstances surrounding the execution of Dr. Lippman's affidavit Plaintiffs say that Dr. Lippman executed the affidavit at BP counsel's suggestion during conversations with Dr. Lippmann about his response to BP's subpoenas.  ECF No. 396-9 ¶ 8. Dr. Lippmann says he briefly spoke with counsel for BP on two occasions by telephone.  *Id.* ¶ 6.  After the first conversation, Dr. Lippmann executed an affidavit so that "this whole mess would be over."  *Id*. ¶ 8.  Afterwards, BP's counsel contacted Dr. Lippmann again and supplied him with a second affidavit (dated August 18, 2021), which he also executed so that "everyone would leave [him] alone."  *Id*. ¶ 10.  The August 18, 2021, Lippman affidavit expanded upon Dr. Lippmann's prior statements. Dr. Lippman said in pertinent part:

> The medical practice where I was employed was contacted by a representative of the Downs Law Group to screen some of its clients… and provide reports for their use in asserting claims against BP.  I do not have a physician-patient relationship with the Downs Law Group clients I evaluated, *nor do I ever intend to proffer an opinion with respect to the underlying cause of their alleged symptoms, injuries, or illnesses*….

ECF No. 396-2 ¶ 2 (emphasis added).[7]  BP then used the expanded August 18, 2021, Lippman affidavit to support BP's argument that it was entitled to judgment as a matter of law against these BELO Plaintiffs.  ECF No. 329-4.

In Plaintiffs' reply memoranda opposing BP's motion for summary judgment, Plaintiffs argue that "a screening diagnosis from the office of Dr. Lippmann" is not the only evidence that Plaintiffs may rely upon in proving "fact of first diagnosis" at trial, ECF No. 370 at 20. The Court agreed.  *See* ECF No. 403.  Notably, however, Plaintiffs did not argue that Dr. Lippmann treated their conditions.  Rather, Plaintiffs maintained that Dr. Lippmann screened them and diagnosed which condition they had (for Plaintiffs' and their counsel's use in the NOIS phase).  ECF No. 370 at 20.  It was also evident that Plaintiffs, at that time, did not regard Dr. Lippmann as an expert witness.  *See* ECF No. 370.  In Plaintiffs' motion for sanctions, however, Plaintiffs describe Dr. Lippmann as both a treating physician and as an expert witness.

After the filing of the motion for sanctions, the parties deposed Dr. Lippmann.  In his November 16, 2021, deposition, Dr. Lippmann confirmed

---

[7] Dr. Lippmann testified in his recent deposition that he does not retract the statements made in his affidavit.  Lippmann Depo. ECF No. 396-8 at 130 ¶¶ 19-20 ("There's no retraction.").

that he had no physician-patient relationship with these Plaintiffs.   Dr.

Lippmann Deposition ("Lippmann Depo."), ECF No. 396-8 at 71-72.  When

pressed about the statements made in his affidavits, Dr. Lippmann testified

that he does not retract the statements made in his affidavits.  Lippmann

Depo., *Id*. at 130 ¶¶ 19-20 ("There's no retraction.")    Thus, Dr. Lippman

maintains that he did not have a physician-patient relationship with these

Plaintiffs and that he does not intend to proffer an expert opinion with

respect to the underlying causes of Plaintiffs' conditions.

## II.  LAW APPLICABLE TO SANCTIONS

Courts have the discretion to sanction conduct that abuses the

judicial process even if procedural rules exist that govern the same

conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115

L.Ed.2d 27 (1991). In fashioning appropriate sanctions, courts have the

inherent power to impose sanctions on parties, lawyers, or both. *In re

Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006).  This

power is derived from the court's need "to manage [its] own affairs so as to

achieve the orderly and expeditious disposition of cases."  *Id*. (citations and

internal quotation marks omitted).

A finding of bad faith is required to impose sanctions under the

court's inherent power. "A finding of bad faith is warranted where an

attorney ... knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Byrne v. Nezhat*, 261 F.3d 1075, 1121 (11th Cir. 2001) (citations omitted). "[F]alse statements alone do not demonstrate bad faith," but they "can be evidence of bad faith, if, for instance, there is other evidence in the record indicating that the statement was made for a harassing or frivolous purpose." *Id.* at 1125.

The Court has inherent power to assess attorneys' fees and appropriate expenses as a sanction for bad faith conduct towards an adversary. *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980).  A court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 258-59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (citations omitted).  The district court's exercise of its inherent authority must be undertaken with restraint and discretion, employed only in compelling situations or extraordinary circumstances.  CJS Federal Civil Procedure § 1396.

"Generally, the inherent power to sanction an attorney for misconduct should be reserved for those cases in which the conduct is egregious, when an attorney or party acts in bad faith, vexatiously, wantonly, or for oppressive reasons, or for the willful disobedience of a court order." *Id.* Additionally, the disqualification of counsel of one's choosing "is an extraordinary measure that should be resorted to sparingly." *Metrahealth Ins. Co. v. Anclote Psychiatric Hosp.*, 961 F. Supp. 1580, 1582 (M.D. Fla. 1997) (citations omitted). "[A] party is presumptively entitled to counsel of his or her choice, and that right should be overridden only if compelling reasons exist." *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003) (citations and internal quotation marks omitted).

Because the standard for imposing sanction is high, for the Court to exercise its inherent powers to sanction, a movant must prove his allegations by clear and convincing evidence. *See Barash v. Kates,* 585 F. Supp. 2d 1347, 1365 (S.D. Fla. 2006) (holding the movant to a clear and convincing evidence standard of proof of conduct that warrants attorneys' fees as sanctions pursuant to the court's inherent power) (citation omitted); *cf. In re BellSouth Corp.,* 334 F.3d 941, 963 n.19 (11th Cir. 2003) (noting that courts require a "heightened showing" in order for a

court to exercise its inherent authority to suspend or disbar an attorney from practicing before it).

## III.  DISCUSSION

Plaintiffs' request for sanctions can be divided into two broad categories.  First, Plaintiffs seek sanctions for alleged violations of Florida state law and general ethics rules.  Second, Plaintiffs seek sanctions for violations of HIPAA and HIPAA's privacy rules.  The Court will address each of these arguments in turn.

### A.    Alleged State Law and Ethics Violations.

#### 1.  *Ex Parte* Communications

Plaintiffs contend that BP's counsel violated Florida law by engaging in *ex parte* communications with Dr. Lippmann as Plaintiffs' *treating physician*.  Plaintiffs also argue that BP's counsel violated their general ethical obligations by engaging in *ex parte* communications with Dr. Lippmann as Plaintiffs' *expert witness* for these cases.

##### *a. Florida state law prohibition on* ex parte *communications with adverse treating physician.*

Relying upon *Hasan v. Garvar*, 108 So.3d 570, 578 (Fla. 2012) and Florida Statute § 456.057 Plaintiffs argue that BP's counsel' violated Florida law by engaging in *ex parte* communications with Dr. Lippmann, as their treating physician.

The current version of Section 456.057 of the Florida Statutes

provides in relevant part:

> Information disclosed to a health care practitioner by a patient
> in the course of the care and treatment of such patient is
> confidential and may be disclosed only to other health care
> practitioners and providers involved in the care or treatment of
> the patient by written authorization from the patient, or if
> compelled by subpoena at a deposition, evidentiary hearing, or
> trial for which proper notice has been given.

Fla. Stat. § 456.057(7)(c).

According to Plaintiffs, Florida courts have construed Section 456.057

as providing for a "broad and expansive physician-patient privilege of

confidentiality." *Hasan* 108 So.3d at 578.  In *Hassan* the Court found that

counsel for a treating physician's own insurance carrier may not engage in

*ex parte* communications with the physician in a medical malpractice case

brought by the physician's patient.

*Hasan,* however, is of no assistance to Plaintiffs here because the

statute by its own terms only applies to information provided to a "health

care practitioner by a patient in the course of the care and treatment of [the]

patient."  Conspicuously absent from the record is any evidence that Dr.

Lippman provided any care or treatment to the Plaintiffs.

Nonetheless, Plaintiffs say Dr. Lippman was a treating physician and

in support of their argument point to certain evidence in the record.

Plaintiffs first point to the NOIS documentation showing that Dr. Lippmann screened four (4) of the nineteen (19) Plaintiffs represented here (Larry Blount, Jason Woods, Daniel Lowery, and Zebulun Johnson).[8]  For three of these Plaintiffs, Dr. Lippmann signed SOAP[9] notes after he conducted what is described as a "BP exam" or "BP physical".  *See* ECF No. 396-3 at 47-48, 75-76, 99-100. 124.  Notably, in the treatment (or Plan) section of the SOAP notes, Dr. Lippmann instructed the plaintiff to either follow-up with their primary care physician, document the information and submit it to Plaintiffs' counsel, or submit the information to the BP Coordinator (or a combination thereof).  ECF No. 396-3 at 48, 76, 100.

Regarding the fourth Plaintiff screened by Dr. Lippmann's office, the Plaintiff, there, merely filled out a medical questionnaire and submitted to a physical examination conducted by Dr. Lippmann's associate, Robert Munoz, PA-C.  *Id*. at 123-24.  The only involvement Dr. Lippmann had with this Plaintiff appears to be Dr. Lippmann's checking the checkbox beside

---

[8] Plaintiffs also submitted NOIS documentation for Kenneth Davenport, but he is not listed in the cases affected by this motion.  *See* ECF No. 396-3 at 20.

[9] SOAP stands for Subjective, Objective, Assessment, Plan.  SOAP notes provide a standard method for documenting patient information.  The Subjective part details a health care providers observation of a patient.  The Objective part includes measurable data such as vital signs, pulse rate, temperature, etc.  The Assessment is where the patient's diagnosis is addressed and interpreted.  The Plan refers to the treatment that the patient needs that is advised by the physician.  *See* What Is a SOAP Note? | Examples

his name under the line on the questionnaire for a physician's signature. ECF No. 396-3 at 124. Plaintiffs have not submitted any information showing Dr. Lippmann's interaction with the other fifteen (15) Plaintiffs represented here—not even NOIS screening forms.

Although the few SOAPs notes Plaintiffs provided to the Court show that Dr. Lippmann made an initial *diagnosis* for four of these Plaintiffs, Plaintiffs have not submitted any evidence or records showing that Dr. Lippman provided any care or treatment for their conditions.

Most telling, however, as to whether Dr. Lippman should be considered a treating physician for purposes of Florida law, Dr. Lippmann has provided sworn statements and testimony three times that he did not have a physician-patient relationship with Plaintiffs, ECF Nos. 396-1, 392-4, 396-8. These statements stand uncontroverted in the record.

In sum, in view of Dr. Lippmann's uncontroverted testimony (and liberally taking into account Plaintiffs' own documentary submissions) the Court has no trouble concluding that Plaintiffs have fallen well short of demonstrating by clear and convincing evidence that Dr. Lippmann should be considered a treating physician for purposes of determining whether BP's contacts with Dr. Lippman violated Florida law. Consequently, there is

an insufficient basis for the Court to exercise its inherent powers to sanction BP's counsel on this ground.

      *b. Ex parte communications with adverse expert* witness.

Plaintiffs also contend that counsel for BP's *ex parte* communications with Dr. Lippmann (as Plaintiff's *expert witness*), regarding the BP subpoenas and Dr. Lippmann's affidavits, violated counsel's general ethical obligations.

*Ex parte* communications between a party and an adverse expert witness are generally prohibited. *Erickson v. Newmar Corp.,* 87 F.3d 298, 301-02 (9th Cir.1996) ("an attorney violates an ethical duty when the attorney has *ex parte* contact with the opposing party's expert witness.") (citation omitted). An attorney who engages in prohibited communications violates the attorney's ethical duty to obey the obligations of the tribunal. *Id.* Also, since the procedure for the discovery of experts is well established, an attorney may also be in violation of the rule prohibiting conduct prejudicial to the administration of justice. *Id.*

In support of their argument that Dr. Lippmann is an expert witness, Plaintiffs rely upon the following discovery and pre-trial materials:[10]

---

[10] Plaintiffs also submitted pages of discovery materials that are unrelated to these cases.

(1)  The Fact Witness Lists for Larry Blount, Fabrice Bowdry[11], Jonah Brackins, Christopher Brown, Thomas Coleman,[12] Shaunette Cook,[13] Tristan Crowder, Dallas Finch, Harley Allen, Daniel Lowery, Jose Marengo, disclose Dr. Lippmann as either a "diagnosing physician" or a person with knowledge about Plaintiff's diagnosis, ECF No. 396-5 at 7, 16, 21, 39, 54, 64, 83, 88.

(2) Preliminary Witness Lists for Plaintiffs Michael Moulder and Jason Woods, list Dr. Lippmann as their diagnosing physician or person with knowledge of diagnosis.  ECF No. 396-5 at 98, 103.

(3) Copies of other Plaintiffs' Rule 26(a) initial disclosures from the first pool of Bellwethers— 2019 cases pending in the Eastern District of Louisiana—disclose Dr. Lippmann as a person with knowledge about Plaintiff's medical conditions and medical history.  *See* ECF No. 396-6 at 2.

Notably, however, Plaintiffs did not disclose Dr. Lippmann as an expert witness in the *Michael Moulder* case, which is the only case of the nineteen represented here that is not stayed.[14]  *See* Plaintiff's Expert Witness Disclosure, ECF No. 405-2.  Further, Plaintiffs did not supply the Court with any documentation showing Dr. Lippmann's expert witness

---

[11] Bowdry lists Jill Marshall-Allen A.R.N.P. as diagnosing physician under Dr. Lippmann's supervision.  ECF No. 396-5 at 12.

[12] Coleman lists Sheldon Roberts, P.A., as diagnosing physician under Dr. Lippmann's supervision.  ECF No. 396-5 at 31.

[13] Cook lists Sheldon Roberts, P.A., as diagnosing physician under Dr. Lippmann's supervision.  ECF No. 396-5 at 35.

[14] The other cases subject to the instant motion are stayed.

status, *e.g.*, consulting witness agreement, retainer agreement, etc.  Lastly, Plaintiffs' discovery responses referenced above reveal that at the time BP's counsel contacted Dr. Lippman Plaintiffs actually viewed Dr. Lippmann as a fact witness, not an expert witness.

Consequently, because the record does not demonstrate that Plaintiffs had at the time of the contact designated Dr. Lippman as an expert witness Plaintiffs have failed to establish by clear and convincing evidence that BP's counsel engaged in *ex parte* contacts with an expert witness.  The Court, therefore, declines to exercise its inherent powers to sanction BP on this ground.

   c. *Improper influence and failure to disclose counsel's role*.

Plaintiffs also argue that counsel for BP violated the Florida Rules of Professional Conduct by (1) pressuring Dr. Lippmann to execute his affidavit and (2) failing to disclose to Dr. Lippman counsel's role in these cases.[15]  As a sanction, Plaintiffs ask the Court to strike Dr. Lippmann's affidavit from future use.

---

[15]  Plaintiffs also complain that that BP bombarded Dr. Lippmann with "serial subpoenas" that harassed and embarrassed him at his new place of work.  ECF No. 396 at 10-11.  Plaintiffs argue that this conduct was particularly egregious because Dr. Lippmann had informed BP on a number of prior occasions that he had no medical records for these Plaintiffs.  *Id*. at 10.  Yet, any dispute over BP's alleged "harassing" subpoenas comes too late.  Rule 45 of the Federal Rules of Civil Procedure requires that "a notice and copy of the subpoena" commanding "the production of documents" be served on a party "before it is served on the person to whom it is directed."  Fed. R. Civ.

BP counters that Dr. Lippmann had an opportunity to retract the statements he made in his affidavits during his November 16, 2021, deposition, which he did not do. In fact, Dr. Lippmann expressly testified that he did not retract his former sworn statements. Lippmann Depo. ECF No. 396-8 at 130 ¶¶ 19-20 ("There's no retraction.") BP says that had Dr. Lippmann's prior statements been coerced, Dr. Lippmann had plenty of time to correct the record in the presence of Plaintiffs' counsel during his deposition. ECF No. 405 at 16. Finally, BP points out that Plaintiffs waited four (4) months to challenge the affidavit as improperly obtained, which BP argues was a litigation tactic to delay or defeat BP's motion for summary judgment. *Id.* at 11.

---

P. 45. BP says that it complied with this requirement, and Plaintiffs do not dispute that BP did. That means BP served Plaintiffs with both a notice and a copy of each subpoena directed at Dr. Lippmann prior to April 2021. Plaintiffs did not object at that time to the alleged harassing nature of the subpoenas, nor did Plaintiffs move for sanctions under Rule 45(d)(1).

Under Rule 45, any objection to producing the Dr. Lippmann's subpoenaed records must have been made in writing and served on BP on or before the date of compliance specified on the subpoena (that is, early May 2021). Fed. R. Civ. P. 45(c)(2)(B); *See e.g.,* ECF No. 396-7. As a general rule, when a party fails to timely object to interrogatories, production requests, or other discovery efforts, the objections are deemed waived. *See In re United States,* 864 F.2d 1153, 1156 (5th Cir.1989). In sum, the time for objecting to BP's subpoenas has long passed, so Plaintiffs' objections are waived.

The Court concludes that there is nothing in the record that reflects Dr. Lippmann's sworn statements were other than voluntarily made.   As a result, the affidavits are fair game.

Finally, Plaintiffs argue that BP's counsel violated Rule 4-4.3(a) of the Florida Rules of Professional Conduct.  Rule 4-4.3(a) provides, in relevant part:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding….

Fla. Bar R. 4-4.3.  The comment to Rule 4-4.3 explains that to avoid a misunderstanding, a lawyer may need to "explain that the [lawyer's] client has interests opposed to those of the unrepresented person." Fla. Bar R. 4-4.3 cmt.  The crux of Plaintiffs complaint here is that counsel failed to identify himself as counsel for BP during the initial telephone call he made to Dr. Lippmann where Dr. Lippman and BP's counsel discussed the June 2021 affidavit.

In support of their argument, Plaintiffs point to Dr. Lippmann's November 15, 2021, affidavit.  In that affidavit, Dr. Lippmann attests "it was not clear to [him] who [counsel] represented" during the first phone call with BP's counsel.  ECF No. 396-9 ¶ 7.  Plaintiffs also rely on Dr. Lippmann's

November 16, 2021, testimony where he attests that he "did not know who [he] was talking to [during that first phone conversation], which side was being represented. But [he] thought it was [Plaintiffs' counsel]". Lippmann Depo. 396-8 at 45 ¶¶ 22-24.

Notwithstanding Dr. Lippmann's confusion at the time of the first phone call, the issue is whether BP sufficiently informed him of counsel's role in the case. The subpoenas BP served on Dr. Lippman expressly disclosed the "name, address, email address and telephone number of BP's counsel, the party issuing the subpoena." *See, e.g.*, ECF No. 396-7 at 5. So, even assuming Dr. Lippmann was confused with whom he was speaking at the time of the first phone call, there is no dispute Dr. Lippman knew he had been served with a subpoena by BP for Plaintiffs' medical records. And logic dictates that if Plaintiffs wanted Dr. Lippman's medical records Plaintiffs simply needed to make the request for the records and not issue a subpoena to obtain their own records.

Based upon these circumstances and the fact that BP expressly identified itself as the party serving the subpoenas, the Court concludes that counsel for BP did not violate an ethical responsibility by reminding Dr. Lippman that they represented BP. And any confusion by Dr. Lippman in the phone call about who counsel represented, falls well short of the

necessary clear and convincing evidence to support the exercise of the
Court's inherent authority. The appropriate forum for resolving a violation of
the Florida Rules of Professional Conduct is the Florida bar, not this Court.

### B.    Alleged HIPAA Violations.

Although Plaintiffs concede that BP "is free to utilize informal
discovery, including specifically *ex parte* interviews under HIPAA" in these
cases, Plaintiffs complain that they did not authorize "unlimited and
unsupervised" *ex parte* communications with BP's counsel.  ECF No. 396
at 18-19.  To the extent that conversations with Plaintiffs' physicians are
permitted by HIPAA, Plaintiffs say BP must do so through limited formal
discovery noticed to Plaintiffs' counsel.  *Id*. at 19.  Finally, Plaintiffs invoke
HIPAA's provisions governing a *healthcare provider's* release of a patient's
Protected Health Information ("PHI") against BP.  *Id*. at 32.

The overriding problem with Plaintiffs' argument is that BP and its
counsel are not a "covered entity" within the meaning of HIPAA.  *See* 45
C.F.R. § 160.103 (defining "covered entity" as a health plan, a health care
clearing house, a health care provider who transmits any health information
in electronic form).

BP raises three arguments supporting its assertion that it did not
violate HIPAA.  First, BP says its counsel never discussed Plaintiffs'

treatment during their conversations with Dr. Lippmann, so there was no HIPAA violation.  ECF No. 406 at 12.[16]  Second, Plaintiffs point out that each Plaintiff executed a valid HIPAA authorization, permitting the disclosure of Plaintiffs' PHI to BP for this litigation.  *Id*. at 13.  Third, BP says the Eleventh Circuit in accordance with Florida law, recognizes that PHI may be released in response to: (1) an "order of a court or administrative tribunal, or (2) a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, when certain conditions are met."  *Murphy v. Dulay*, 768 F.3d 1360, 1369 (11th Cir. 2014) (*citing* and quoting 45 C.F.R. § 164.512(e)(1)(i)-(ii) (internal quotation marks omitted).

According to BP, that is exactly what happened here.  BP subpoenaed Plaintiffs' medical records from Dr. Lippmann pursuant to a valid subpoena and in compliance with HIPAA's notice and authorization requirements.[17]

HIPAA is largely satisfied when a patient has signed a valid authorization for the release of confidential medical information, which,

---

[16] As a practical matter, BP could not have discussed Plaintiffs' treatment with Dr. Lippmann because he never treated them.

[17] This *is* the formal and noticed discovery procedure BP used to obtain Plaintiffs' medical records from Dr. Lippmann in line with what Plaintiffs say must be done.

"alone, is sufficient to permit disclosure in compliance with HIPAA, 'so long as such use or disclosure [is] consistent with such authorization.'" *Murphy v. Dulay*, 768 F.3d 1360, 1370 (11th Cir. 2014) (alteration in original) (quoting 45 C.F.R. § 164.508).

As for Plaintiffs' argument that the unsupervised communications between BP's counsel and Dr. Lippmann were "unlimited" and exceeded the scope of their authorizations, it is a stretch to suggest that two brief telephone conversations with Dr. Lippmann about how he might comply with BP's subpoenas can be characterized as such. Moreover, Plaintiffs had actual notice of the subpoenas BP issued to Dr. Lippmann in the Spring of 2021. Any concerns they had about Dr. Lippmann's response should have, and could have, been addressed then.

Finally, the case law supports BP's position. When a litigant alleges matters that put his medical status at issue, he waives the right to object to the discovery of his medical records. *See Sanchez v. McCray,* 349 F. App'x 479, 483 (11th Cir. 2009) ("the district court properly overruled [the plaintiff's] objection to the admission of his medical records.... [The Plaintiff] put his medical status at issue, and thus his medical records were admissible as evidence"). Plaintiffs in this case have squarely put their medical conditions at issue. Plaintiffs executed HIPAA authorizations for

this very reason.  Because HIPAA applies to medical providers and not private parties, even if a HIPAA violation had occurred, Dr. Lippmann (as a covered entity) and not BP or its lawyers would be the party subject to violating HIPAA.  None of this conduct, however, supports or comes close to supporting Plaintiffs' request that the Court exercise its inherent authority and sanction BP for talking to Dr. Lippman.

## IV.  CONCLUSION

Accordingly, for all the reasons explained above, it is respectfully **RECOMMENDED** that Plaintiffs' Motion for Sanctions Due to *Ex Parte* Communications with Dr. Ron Lippman, ECF No. 395, should be **DENIED**.

**IN CHAMBERS** this 2nd day of February 2022.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.